UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| **RFF FAMILY PARTNERSHIP, LP,** : | Case No. 1:07 CV 1617 |
| Plaintiff, : | |
| : | **JUDGE KATHLEEN O'MALLEY** |
| v. : | |
| **STEVEN WASSERMAN,** *et al.*, : | **OPINION & ORDER** |
| Defendants. : | |

This case is before the Court on Plaintiff RFF Family Partnership, LP's *Motion to Remand* (Doc. 5) and the Defendants' *Motion to Dismiss for Failure to Join Indispensable Parties or, in the Alternative, Motion to Transfer* (Doc. 6). For the reasons more fully articulated below, RFF's *Motion to Remand* is **GRANTED**, and, accordingly, the Defendants' *Motion to Dismiss for Failure to Join Indispensable Parties or, in the Alternative, Motion to Transfer* (Doc. 6) is rendered **MOOT**.

I.   **BACKGROUND**

The Plaintiff, RFF Family Partnerships, LP, ("RFF") is a California Partnership licensed by the State of California as a finance lender. *Complaint*, Doc. 1-2 at ¶ 1. On May 4, 2007, RFF filed a Complaint in the Cuyahoga County Court of Common Pleas alleging four causes of action against the Defendants, Attorney Steven Wasserman ("Wasserman") and the law firm of which he is a named partner, Chernett, Wasserman, Yarger & Pasternak LLC ("CWYP") (collectively, the "Defendants"). The allegations in the Complaint arise from Wasserman's representation of RFF

in connection with a series of financial transactions in which RFF loaned in excess of one million dollars to third parties. *Id.* at ¶¶ 4-21. In particular, Wasserman allegedly introduced CMI Financial Network, Inc. ("CMI") to RFF as a client interested in borrowing $750,000.00 from RFF in late 2005. *Id.* at ¶¶ 10-15. Wasserman allegedly told RFF that CMI was an event planning company with consistent, ongoing service contracts with major clients like Honeywell Security, and that a loan to CMI would be secured by CMI's accounts receivable, which were adequate to cover the amount of the loan. In addition, Wasserman allegedly personally guaranteed the loan, prepared the transactional documents on behalf of RFF, and told RFF where to wire the funds. RFF believes that CMI paid Wasserman a fee for obtaining the loan. Similarly, RFF allegedly loaned hundreds of thousands of dollars to CMI in 2005 and 2006 in deals allegedly facilitated by Wasserman. *Id.* RFF subsequently discovered that the loans were not properly collateralized and that Honeywell had cancelled its contracts with CMI. *Id.* at ¶ 20. RFF believes that Wasserman knew the loans were not properly collateralized and did not tell RFF, despite the fact that he was acting in a fiduciary role as RFF's attorney. *Id.* at ¶ 21. The Complaint includes a demand for a trial by jury. *Id.* at p. 8.

RFF's Complaint alleges that Wasserman's conduct constituted fraud, negligent misrepresentation, and legal malpractice, and that co-defendant CWYP is liable under the doctrine of *respondeat superior*. *Id.* at ¶¶ 22-39.

RFF voluntarily dismissed its fraud and negligent misrepresentation claims on July 20, 2007, leaving legal malpractice and *respondeat superior* as its only remaining claims.[1] *See* Doc. 9.

Notably, RFF's Complaint does **not** name CMI or its owners, Hugh Thomas Grinnon and Jonathan H. Grinnon, as Defendants. Although CMI and the Grinnons (collectively, the "Debtors"),

---

[1] The Court entered an Order dismissing RFF's fraud and negligent misrepresentation claims on August 1, 2007.

2

not Wasserman, are the parties to whom RFF loaned money, RFF chose to sue only Wasserman and CWYP. Each of the Debtors – Hugh Grinnon, Jonathan Grinnon, and CMI - have filed bankruptcy petitions in the United States District Court for the Eastern District of New York. *See In re Hugh T. Grinnon*, No. 07-70307(SB); *In re Jonathan H. Grinnon*, No. 07-70333(SB); *In re The CMI Network, Inc.*, 07-71165(SB).[2]

As noted by RFF, this is not the only lawsuit in which a lender is asserting claims against Wasserman and CWYP arising out of their association with the Grinnons and CMI. *See* Doc. 5-3 (Complaint in *Boudle v. The CMI Network, et al.*). The case *Boudle v. The CMI Network*, No. 8:07-cv-750-T-23MSS (M.D. Fla.), was filed in Florida state court and removed to the United States District Court for the Middle District of Florida. In *Boudle*, Ange Boudle, an individual who loaned money to CMI in transactions facilitated by Wasserman and CWYP, sued CMI, the Grinnons, *and* Wasserman and CWYP. In addition to claims against CMI and the Grinnons, the Complaint in *Boudle* asserts claims of fraudulent misrepresentation, negligent misrepresentation, and aiding and abetting fraud against Wasserman and CWYP. *See* Doc. 5-3. Furthermore, Boudle is listed as a creditor in both of the Grinnons' bankruptcy cases and filed an adversary proceeding in the bankruptcy court in both cases on April 11, 2007. *See Boudle v. Jonathan H. Grinnon*, Adv. Pro. No. 07-8123(SB); *Boudle v. Hugh T. Grinnon*, Adv. Pro. No. 07-8122(SB). On July 3, 2007, the Florida District Court granted Wasserman and CWYP's motion to transfer the *Boudle* case to the Eastern District of New York. *See* Doc. 6-3.

In addition, Wasserman and CWYP have filed an adversary proceeding against each of the

---

[2] Therefore, any attempt by RFF to sue the Debtors would have been barred by the automatic stay triggered by their bankruptcy proceedings. *See* 11 U.S.C. 362(a)(1).

3

Grinnons in the bankruptcy court in New York. *See* Docs. 6-4, 6-5 (Adv. Pro. Nos. 07-8167 and 07-8168). In their adversary proceedings Wasserman and CWYP allege that they were defrauded by the Grinnons, who intentionally misrepresented the fortunes of their companies and the nature of the collateral used to secure the loans Wasserman and CWYP facilitated. In essence, Wasserman and CWYP claim that they were duped by the Debtors just like the borrowers, RFF and Boudle. The adversary proceedings specifically reference this lawsuit – RFF v. Wassserman – and seek "to deny Debtor[s'] discharge of [their] indebtedness to Plaintiffs in connection with direct claims for damages or derivative claims for indemnification and contribution arising out of a multi million dollar fraudulent scheme perpetrated by the Debtor[s]." *See* Doc. 6-5 at 1.

Unlike Boudle, RFF has not filed an adversary proceeding against any of the Debtors in the bankruptcy court. RFF is, however, listed as a creditor on Schedule F in each of the Debtors bankruptcy cases. *See* Docs. 6-6, 6-7, 6-8.

The Defendants removed this case to this Court on June 1, 2007. Doc. 1. On June 29, 2007, RFF filed its *Motion to Remand*. Doc. 5. On July 12, 2007, the Defendants filed their *Motion to Dismiss for Failure to Join Indispensable Party or, in the Alternative, Motion to Transfer*. Doc. 6. These motions have now been fully briefed and are ripe for resolution.[3]

## II. DISCUSSION

The pending motions require the Court to determine whether it has jurisdiction over this case under the provisions of 28 U.S.C. § 1334 and whether, if so, it should exercise that discretion. The first issue is whether this case is "related to" the bankruptcy proceedings involving CMI, Hugh Grinnon and Jonathan Grinnon pending in the United States District Court for the Eastern District

---

[3] In fact, the briefing on these motions has been extensive. *See* Docs. 5-8, 10-20.

of New York under § 1334(b). If so, the second issue is whether the court must or should abstain from exercising jurisdiction under § 1334(c). Although the Court finds that this case is "related to" the Debtors' bankruptcy proceedings, under the circumstances of this case, it finds abstention is appropriate. Accordingly, for the reasons more fully articulated below, RFF's motion to remand is **GRANTED**. Consequently, the Defendants' motion to dismiss for failure to join an indispensable party, or, in the alternative, to transfer, is rendered **MOOT**.

### A.  RFF'S MOTION TO REMAND

The Defendants removed this action on the basis of diversity jurisdiction under 28 U.S.C. § 1332(a)(1) and "related to" jurisdiction under 28 U.S.C. § 1334(b). Curiously, the *Motion to Remand* does not mention either of the Defendants' bases for removal. *See* Doc. 5. Nonetheless, the Court has a continuing obligation to examine subject matter jurisdiction in every case. *See*, *e.g.*, *Ins. Corp. of Ireland, Ltd. v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 702 (1982).

### 1.  Removal Is Not Appropriate Based on Diversity Jurisdiction

In their Notice of Removal, the Defendants assert that removal is appropriate based on diversity jurisdiction. Diversity jurisdiction is governed by 28 U.S.C. § 1332(a)(1), which states:

> The district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000 . . . and is between . . . citizens of different states.

Removal from state to federal court may be premised on diversity jurisdiction, with one important exception. *See* 28 U.S.C. § 1441(b). Diversity actions are only removable "if none of the . . . defendants is a citizen of the state in which such action is brought." *Id.* The Plaintiff, RFF, is a California partnership. Defendant Wasserman is a resident of Ohio. Defendant CWYP is an Ohio Limited Liability Corporation. Therefore, the parties are completely diverse. And, the Complaint

generally alleges that the Defendants induced RFF to issue several fraudulent loans, each well in excess of $75,000.00. The Complaint, however, was filed in the state in which both defendants reside – Ohio. Accordingly, the federal district courts cannot exercise diversity jurisdiction over this matter. *See* 28 U.S.C. § 1441(b)[4]; *see also Chase Manhattan Mortgage Corp. v. Smith*, 507 F.3d 910, 914 (6th Cir. 2007).

### 2. Removal Is Appropriate Based on "Related To" Jurisdiction

The Defendants also assert "related to" jurisdiction under 28 U.S.C. § 1334(b) as an alternative basis for removal. They argue that the federal district courts have "related to" jurisdiction over this case because the outcome could *conceivably* effect the administration of the Debtors' estates in bankruptcy in the United States District Court for the Eastern District of New York.

Section 1334(b) states as follows:

> Notwithstanding any Act of Congress that confers exclusive jurisdiction on a court or courts other than the district courts, **the district courts shall have original** but not exclusive **jurisdiction of all civil proceedings** arising under title 11, or arising in or **related to cases under title 11**.

28 U.S.C. § 1334(b) (emphasis added). Under Sixth Circuit law interpreting § 1334(b), the test to be applied in determining whether this lawsuit is "related to" the Debtors' bankruptcy proceedings is whether the outcome of RFF's claims against the Defendants could conceivably have any effect on the Debtors' estates. *See Robinson v. Michigan Consol. Gas. Co., Inc.*, 918 F.2d 579, 583 (6th Cir. 1990).

---

[4] RFF never expressly argues under § 1441(b) and the Defendants conveniently ignore the statute. RFF alludes to § 1441(b) for the first time in its reply brief, quoting a case quoting § 1441(b). *See* Doc. 10 at 6-7 (quoting *Alexander v. Elec. Data Sys. Corp.*, 13 F.3d 940, 948 (6th Cir. 1994). It is not clear, however, that RFF understands the importance of § 1441(b), or even that the case is quoting the statute. This is irrelevant, however, in light of the Court's independent obligation to examine the propriety of exercising diversity jurisdiction.

The Supreme Court in *Celotex Corp. v. Edwards*, 514 U.S. 300, 307-08 (1995), acknowledged that Congress intended the scope of "related to" jurisdiction under 28 U.S.C. § 1334(b) to be expansive. The Supreme Court cited legislative history clearly indicating that the purpose of the section was to broaden federal jurisdiction in order to facilitate the efficient adjudication of bankruptcy petitions. *See id.* at 308 (citing H.R.Rep. No. 95-595, pp. 43-48 (1977)). The Supreme Court also cited *Robinson*, 918 F.2d at 583-84, for the Sixth Circuit's definition of "related to" jurisdiction. *Id.* at n.6. In *Robinson* the Sixth Circuit discussed the scope of § 1334(b) as follows:

> The circuit courts have uniformly adopted an expansive definition of a related proceeding under section 1334(b) and its substantially identical predecessor under the Bankruptcy Reform Act of 1978, 28 U.S.C. § 1471(b). . . . As the Third Circuit explained in *In re Pacor, Inc.*, 743 F.2d 984 (3rd Cir.1984):
>
>> The usual articulation of the test for determining whether a civil proceeding is related to bankruptcy is whether *the outcome of the proceeding could conceivably have any effect on the estate being administered in bankruptcy*. Thus, the proceeding need not necessarily be against the debtor or against the debtor's property. An action is related to bankruptcy if the outcome could alter the debtor's rights, liabilities, options, or freedom of action (either positively or negatively) and which in any way impacts upon the handling and administration of the bankrupt estate.
>
> *Id*. at 994 (emphasis in original; citations omitted). The *Pacor* formulation has been adopted by the Fourth Circuit, *see In re A.H. Robins Co.*, 788 F.2d 994, 1002 n. 11 (4th Cir.1985) (dicta), *cert. denied*, 479 U.S. 876, 107 S.Ct. 251, 93 L.Ed.2d 177 (1986); the Fifth Circuit, *see In re Wood*, 825 F.2d at 93; the Eighth Circuit, *see In re Dogpatch, U.S.A., Inc.,* 810 F.2d 782, 786 (8th Cir.1987); and the Ninth Circuit, *see In re Fietz*, 852 F.2d 455, 457 (9th Cir.1988). We too have accepted the *Pacor* articulation, albeit with the caveat that "situations may arise where an extremely tenuous connection to the estate would not satisfy the jurisdictional requirement." *In re Salem Mortgage Co.*, 783 F.2d 626, 634 (6th Cir.1986); *accord In re Turner*, 724 F.2d 338, 341 (2d Cir.1983).

The Sixth Circuit has consistently articulated the *Pacor* definition quoted in *Robinson* as the

7

standard. *See In re Dow Corning Corp.*, 86 F.3d 482, 489 (6th Cir. 1996) ("Our circuit adopted the *Pacor* test for determining whether a civil proceeding is "related to" a bankruptcy proceeding under Section 1334(b) in *Robinson*, 918 F.2d at 583 . . . ."); *see also Sanders Confectionary Prods., Inc. v. Heller Fin., Inc.*, 973 F.2d 473, 482 (6th Cir. 1992) (stating "the matter need not directly involve the debtor, as long as it 'could alter the debtor's rights [or] liabilities,' but an 'extremely tenuous connection' will not suffice") (quoting *In re Wolverine Radio*, 930 F.2d 1132, 1142 (6th Cir. 1991); *In re Salem Mortgage Co.*, 783 F.2d 626, 634 (6th Cir. 1986).

Furthermore, the Sixth Circuit recognizes that lawsuits that do not directly involve the debtor as a party, but which may give rise to indemnification claims against the debtor, can satisfy the test for "related to" jurisdiction. *See In re Dow Corning*, 86 F.3d at 494. In *Dow Corning*, the Sixth Circuit stated:

> The potential for [the debtor] being held liable to the nondebtors in claims for contribution and indemnification, or vice versa, suffices to establish a conceivable impact on the estate in bankruptcy. Claims for indemnification and contribution, whether asserted against or by [the debtor], obviously would affect the size of the estate and the length of time the bankruptcy proceedings will be pending, as well as [the debtor's] ability to resolve its liabilities . . . .

*Id.* Moreover, the Sixth Circuit has held that § 1334(b) "does not require a finding of definite liability of [an] estate as a condition precedent to holding an action related to a bankruptcy proceeding." *In re Salem Mortgage Co.*, 783 F.2d at 635. Therefore, indemnity claims against the debtor need not ripen in order to serve as a potential basis for "related to" jurisdiction, as long as the potential indemnification claims will have a conceivable effect on the bankruptcy proceedings. *In re Dow Corning*, 86 F.3d at 491.

Clearly, the standard for "related to" jurisdiction is exceedingly liberal, and the Court finds that it is satisfied here. Although the claim in this lawsuit – attorney malpractice -- is narrowly

8

focused on the fiduciary relationship between RFF (the client) and the Defendants (the lawyer(s)), the Defendants have expressly asserted indemnification claims arising out of this lawsuit in their adversary proceedings in the Debtors' bankruptcy cases. *See* Docs. 6-4, 6-5. It is *conceivable* that a series of contingent events could occur that would cause the outcome of this lawsuit to effect the administration of the Debtors' estates in bankruptcy.[5]  Therefore, because the Sixth Circuit holds that the potential of an indemnification claim arising from a lawsuit between non-debtor parties could conceivably effect the administration of the bankruptcy estate, the Court has subject matter jurisdiction over this lawsuit pursuant to 28 U.S.C. § 1334(b). *See In re Dow Corning*, 86 F.3d at 494; *Dunkirk Ltd. P'ship v. TJX Cos., Inc.*, 139 B.R. 643, 644-45 (N.D. Ohio 1992) (abstaining, but first finding conceivability test satisfied under indemnification theory despite possibility that defendant would not have a right to indemnification); *see also Randall & Blake, Inc. v. Evans (In re Canion)*, 196 F.3d 579, 585-87 (5th Cir. 1999); *In re Nat'l Century Fin. Enters., Inc., Inv. Litig.*, 323 F.Supp. 2d 861, 871 (S.D. Ohio 2004).

---

[5] It is highly possible that Wasserman and CWYP would have no right to indemnification in connection with a malpractice judgment if one is rendered against them. That is because, unlike a fraud claim or an action on the debt itself, a malpractice judgment would necessarily be predicated on counsel's failure to discharge their own professional and contractual obligations to RFF. Such speculation regarding the interplay between these actions does not bar a finding of "related to" jurisdiction, however. *See*, *e.g.*, *In re Wolverine Radio*, 930 F.2d at 1143 (acknowledging that indemnification claims ultimately may have no effect on the bankruptcy estate but finding jurisdiction exists based on a conceivable effect). Here, Wasserman and CWYP are seeking indemnification with respect to all claims against it by their clients in connection with loans to CMI and those indemnification claims, which are not frivolous on their face, will need to be decided by the bankruptcy court. Thus, while not a given, the potential of an impact on the bankruptcy estate is feasible, and certainly not too tenuous as to prohibit the exercise of jurisdiction under 28 U.S.C. § 1334(b). *But see Cunningham v. Pension Ben. Guar. Corp.*, 235 B.R. 609, 616 (N.D. Ohio 1999)(finding effect of indemnification claims in post-confirmation lawsuit too tenuous to support jurisdiction).

### 3. Abstention – 28 U.S.C. § 1334(c)

The district court's broad jurisdictional authority under 28 U.S.C. § 1334(b) is qualified by an important limitation in the removal context, however. *See In re Salem Mortgage Co.*, 783 F.2d at 635. Specifically, Congress enacted both mandatory and permissive abstention provisions as part of 28 U.S.C. § 1334 in an effort to balance the interests of federalism and efficient administration of bankruptcy estates. *See* 28 U.S.C. § 1334(c)[6]; *see also In re Dow Corning*, 86 F.3d at 497; *In re Salem Mortg. Co.*, 783 F.2d 626, 635 (6th Cir. 1986) (citing Note: *Selective Exercise of Jurisdiction in Bankruptcy-Related Civil Proceedings*, 59 Tex. L. Rev.325, 334-36 (1981); *Countrywide Petroleum Co. v. Huntington Capital Inv. Co.*, No. 1:06cv1537, 2007 WL 710235, at *2 (N.D. Ohio Mar. 6 2007); *In re Best Reception Sys., Inc.*, 229 B.R. 932, 952 (Bkrtcy. E.D. Tenn. 1998) (quoting

---

[6] Section 1334(c)(1) provides for permissive abstention and states:

> **(c)(1)** Except with respect to a case under chapter 15 of title 11, nothing in this section prevents a district court in the interest of justice, or in the interest of comity with State courts or respect for State law, from abstaining from hearing a particular proceeding arising under title 11 or arising in or related to a case under title 11.

Section 1334(c)(2) provides for mandatory abstention and states:

> **(2)** Upon timely motion of a party in a proceeding based upon a State law claim or State law cause of action, related to a case under title 11 but not arising under title 11 or arising in a case under title 11, with respect to which an action could not have been commenced in a court of the United States absent jurisdiction under this section, the district court shall abstain from hearing such proceeding if an action is commenced, and can be timely adjudicated, in a State forum of appropriate jurisdiction.

10

*Republic Reader's Serv., Inc. v. Magazine Serv. Bureau, Inc. (In re Republic Reader's Serv., Inc.)*, 81 B.R. 422 (Bkrtcy. S.D. Tex. 1987), discussing Congressional purpose of abstention provisions).

The Sixth Circuit summarized the purpose of § 1334(c) in *In re Salem Mortgage Co.* as follows:

> Congress wisely chose a broad jurisdictional grant *and a broad abstention doctrine* over a narrower jurisdictional grant so that the district court could determine in each individual case whether hearing it would promote or impair efficient and fair adjudication of bankruptcy cases. . . . The degree to which the related proceeding is related to the bankruptcy case, as a practical matter, will doubtless be an important factor in the decision whether to abstain.

*In re Salem Mortgage Co.*, 783 F.2d at 635 (emphasis added) (omitting citation); *see also Mann v. Waste Mgmt. of Ohio, Inc.*, 253 B.R. 211, 214 (N.D. Ohio 2000) (noting that in enacting § 1334 Congress intended to address comity and judicial convenience by allowing federal courts to abstain) (citing *Matter of Wood*, 825 F.2d 90, 93 (5th Cir. 1987).[7]

---

[7] This Court has noted that the Sixth Circuit "appears to have taken a particularly expansive view of the 'related to' jurisdiction." *In re Hunt Energy Co.*, 1988 U.S. Dist. LEXIS 14295 (N.D. Ohio 1988). The Southern District of Ohio has specifically noted that abstention is the method Congress prescribed for preventing this expansive view from allowing the federal courts to unreasonably encroach upon the state courts' jurisdictional authority in the interest of federalism:

> In proceedings . . . where the connection to the debtor's main bankruptcy case is quite remote, jurisdictional challenges oftentimes require the Court to hesitantly employ a sort of "line-drawing" analysis. Indeed, the boundaries of the "conceivable effect" test seem to be limited only by the imagination of the creative lawyer, leaving the Court to entertain the possibilities of speculative outcomes and their consequence to the estate.
>
> Fortunately, Congress' broad grant of bankruptcy jurisdiction is also qualified by the discretionary abstention provision of 28 U.S.C. § 1334(c)(1), which provides an additional limitation designed to prevent overextension of bankruptcy jurisdiction.

11

Accordingly, even though the outcome of this case could conceivably impact the administration of the Debtors' bankruptcy estate under the Sixth Circuit's expansive interpretation of § 1334(b), this Court is required to examine its jurisdiction under the abstention provisions of § 1334(c). *See In re Lowenbraun*, 453 F.3d 314, 320 (6th Cir. 2006)("Depending on the legal and factual circumstances, a bankruptcy court either *must* abstain from hearing a state-law claim (mandatory abstention) . . . , or *may* abstain (permissive abstention) . . . .") (emphasis in original); *French v. Fisher*, 290 B.R. 313, 318 (N.D. Ohio 2003) (finding "related to" jurisdiction but remanding under § 1334(c)(2)); *Loomis Elec., Inc. v. Lucerne Prods., Inc.*, 225 B.R. 381, 387 (N.D. Ohio 1998) (same); *In re Cont'l Holdings, Inc.*, 158 B.R. 442, 445-46 (Bkrtcy. N.D. Ohio 1993) (remanding under § 1334(c)(1) and finding predominance of state law contract claims critical).

  i.  **Mandatory Abstention – § 1334(c)(2)**

Section 1334(c)(2) "directs District Courts to decline jurisdiction over *removed* causes of action which, even if 'related to' matters arising under Title 11 (and thus a fair subject for the assertion of original jurisdiction)," satisfy the following elements: (1) timely motion raising abstention; (2) the action is based on state law; (3) the action was commenced and can be timely adjudicated in a state forum of appropriate jurisdiction; (4) the District Court would not have jurisdiction but for the "related" bankruptcy proceeding; and (5) the action is not a bankruptcy core proceeding and does not arise in a bankruptcy core proceeding. *Countrywide Petroleum Co.*, 2007 WL 710235, at *2 (emphasis in original); *In re Dow Corning*, 86 F.3d at 497. If the elements of mandatory abstention are satisfied, then the district court must remand. *Countrywide Petroleum Co.*, 2007 WL 710235, at *2.

---

*Cardinal Indus., Inc. v. Suitt Constr. Co., Inc.*, 142 B.R. 807, 810 (Bkrtcy. S.D. Ohio 1992).

12

In this case, it is apparent that the last four elements are satisfied. RFF's action is indisputably based on state law. The only remaining claims are a state law tort claim for attorney malpractice against Wasserman, and a *respondeat superior* claim against Wasserman's law firm, CWYP. *See Complaint*, Doc. 1-2 at pp. 6-7.[8] RFF brought this case in the Cuyahoga County Court of Common Pleas, a state court of appropriate jurisdiction given that Wasserman and CWYP are Ohio citizens whose regular place of business is in Cuyahoga County. Although the Defendants argue that the Debtors are indispensable parties, the state court is equally capable of timely adjudicating this issue, and the case generally. Furthermore, as discussed above, the fact that the Defendants are Ohio citizens undermines diversity jurisdiction, and the only remaining basis for jurisdiction asserted by the Defendants is "related to" jurisdiction under § 1334(b). Lastly, the parties agree that this is not a core proceeding and does not arise in a core proceeding; the Defendants argue that it is a "related to" proceeding, and RFF argues that it is an *unrelated* proceeding.

Consequently, but for the first element of mandatory abstention – the procedural requirement of a timely motion raising abstention – the Court would be *required* to abstain from exercising "related to" jurisdiction over this removed cause of action. *See* 28 U.S.C. § 1334(c)(2). RFF filed a timely motion to remand challenging this Court's subject matter jurisdiction. RFF's attorney

---

[8] As noted above, RFF's Complaint also included claims for fraud and negligent misrepresentation. *See Complaint*, Doc. 1-2 at 5-6. RFF voluntarily dismissed these claims on July 20, 2007. The Defendants argue that the initial presence of these claims, and their apparently strategic dismissal in connection with RFF's motion to remand, indicate that this lawsuit is not limited to attorney malpractice. Regardless, fraud and negligent misrepresentation are also indisputably state law tort claims. Moreover, it is well-established under Ohio law that a tort action premised on an attorney's breach of his duties to his client is a legal malpractice claim. *See Richardson v. Doe*, 176 Ohio St. 370, 372 (Ohio 1964); *Muir v. Hadler Real Estate Mgmt. Co.*, 4 Ohio App. 3d 89, 90 (Ohio Ct. App. 1982).

13

conspicuously did *not* raise abstention, however, mandatory or permissive, as a basis for remand, either in his motion to remand or any subsequent filing. Neither party has ever mentioned 28 U.S.C. § 1334(c) or the word "abstention."

The Sixth Circuit has stated that mandatory abstention "is not jurisdictional and must be raised in a timely motion." *Robinson*, 918 F.2d at 584; *see also Lindsey v. Dow Chem. Co. (In re Dow Corning II)*, 113 F.3d 565, 570 (6th Cir. 1997) (reversing on mandamus district court application of mandatory abstention in numerous silicone breast implant cases in part because no motion for abstention had been filed). In other words, the Court cannot invoke mandatory abstention *sua sponte* (in contrast to subject matter jurisdiction generally) because, based on the first clause of the statute itself, Congress only requires abstention at the request of a party. *See* 28 U.S.C. § 1334(c)(2).

It is tempting, however, to treat the motion for remand as satisfying the "timely motion" requirement. The motion to remand is essentially an affirmative objection to jurisdiction and a request that the Court assess its authority to hear the case. RFF has made it abundantly clear in their motion to remand (and all subsequent briefing) that they do not want to litigate this case in federal court. But for an error on the part of RFF's counsel in phrasing the precise basis for remand, abstention would be required by statute. As another Judge of this Court has noted:

> If the Court did not decide the issue of abstention solely on the basis that a motion had not been filed, it is likely that such a motion would be filed and the Court would then be required to consider the issue at a later time. To require the actual filing of a motion would be placing form over substance and would not be consistent with the interest of reaching an expeditious resolution to this case.

*In re Revco D.S., Inc.*, 99 B.R. 768, 772-73 (N.D. Ohio 1989) (quoting *In re Baumgartner*, 57 B.R. 517, 521 (Bkrtcy. N.D. Ohio 1986)). RFF's motion to remand substantially alleviates any concern

14

that abstention would not be consistent with Congress' intent to prevent the Court from acting *sua sponte* by requiring a timely motion to invoke mandatory abstention.

The cases cited above, however, make it clear that the motion requirement is only satisfied when the movant at least *argues* abstention; not when the movant simply seeks remand. *In re Revco D.S., Inc.*, 99 B.R. at 772-73 (holding that a motion arguing abstention need not be captioned as such); *see also In re Baumgartner*, 57 B.R. at 521 (holding that oral argument in court proceeding regarding abstention satisfies § 1334(c)(2) motion requirement). In both *In re Revco D.S., Inc.* and *In re Baumgartner*, the party seeking abstention complied with the Sixth Circuit's interpretation of the "timely motion" element in *Robinson* because they "*raised*" the issue. *See Robinson*, 918 F.2d at 584. This case is distinguishable because RFF has not raised abstention. Consequently, the Defendants have not had an opportunity to present arguments opposing abstention. Accordingly, although the Court concludes that it would be *required* to abstain if RFF had argued – or even mentioned – mandatory abstention, in light of RFF's failure to argue abstention in its motion to remand, mandatory abstention is not applicable.

### ii.     Permissive Abstention – § 1334(c)(1)

Unlike mandatory abstention, the Court may consider permissive abstention *sua sponte*:

> [N]othing in this section prevents a district court in the interest of justice, or in the interest of comity with State courts or respect for State law, from abstaining from hearing a particular proceeding arising under title 11 or arising in or related to a case under title 11.

28 U.S.C. § 1334(c)(1). Under § 1334(c)(1), the district court may remand if it determines that permissive abstention serves the interests of justice and comity with State Courts. *See In re Baumgartner*, 57 B.R. at 521. In addition, under the circumstances of this case, it is worth reiterating that, in discussing the role of abstention in moderating the expansiveness of "related to" jurisdiction

15

the Sixth Circuit has stated:

> The degree to which the related proceeding is related to the bankruptcy case, as a practical matter, will doubtless be an important factor in the decision whether to abstain.

*In re Salem Mortgage Co.*, 783 F.2d at 635.

Although there is significant debate regarding the proper scope of permissive abstention in the bankruptcy context,[9] as a practical matter, however, Courts usually simply apply the factors first articulated by Bankruptcy Judge Margaret A. Mahoney in *In re Republic Reader's Serv., Inc.*, 81 B.R. at 429 (Bkrtcy. S.D. Tex. 1987), to determine whether abstention is appropriate under 28 U.S.C. § 1334(c)(1). *See*, *e.g.*, *Mann*, 253 B.R. at 214-15 (applying the *Republic Reader's Serv.* factors

---

[9] The debate regarding the proper scope of 28 U.S.C. § 1334(c)(1) centers around whether (and/or to what extent) permissive abstention under § 1334(c) should be subject to the general rule that abstention is rarely appropriate given that this limitation developed within the context of common law abstention. *See*, *e.g.*, *In re Republic Reader's Serv., Inc.*, 81 B.R. at 424-28 (analyzing the distinction in detail); *In re Best Reception Sys., Inc.*, 220 B.R. at 952-53 (discussing the split of authority and concluding that abstention should be interpreted more broadly in the bankruptcy context); *In re United Sec. & Communications, Inc.*, 93 B.R. 945 (Bkrtcy. S.D. Ohio 1988) (addressing the history of the Bankruptcy Amendment and Federal Judgeship Act of 1984 in detail and applying the more restrictive abstention rule); *In re Nat'l Century Fin. Enters., Inc., Inv. Litig.*, 323 F.Supp. 2d 861 (S.D. Ohio 2004) (same); *see generally* Susan Block-Lieb, *Permissive Bankruptcy Abstention*, 76 Wash. U. L.Q. 781 (1998) (discussing the split of authority and proposing a refined interpretation). In other words, advocates of a broader abstention approach in the bankruptcy context argue that, because Congress *codified* abstention in the bankruptcy context, and did not include the common law limitations in the language of the statute, Congress did not intend for those limitations to apply. On the other hand, some courts and commentators maintain that, once a basis for jurisdiction has been established – *i.e.*, "related to" jurisdiction – the federal courts are generally obligated to adjudicated the case before them. *See*, *e.g.*, *In re Best Reception Sys., Inc.*, 220 B.R. at 952-53 (citing cases applying this approach). The key distinction in applying the two approaches is whether the state law questions at issue are difficult or unsettled – the restrictive rule treats this as the most important factor in assessing the propriety of permissive abstention instead of just one of many factors, while the broader view counsels against giving this factor undue weight.

16

after noting that abstention is rare but that Court should not be hesitant to apply it when state issues substantially predominate); *In re Cont'l Holdings, Inc.*, 158 B.R. at 446 (finding permissive abstention where state law issues, although not difficult or unsettled, predominated).  While acknowledging the split of authority, *see* footnote 9, the Court concludes that a broader approach to § 1334(c)(1) abstention best reflects the intent of Congress, and is not foreclosed by binding authority. This reasoning was cogently articulated by Judge Mahoney in *In re Republic Reader's Serv., Inc.*, 81 B.R. 422.  The fact that Judge Mahoney's list of factors has become the standard for analyzing permissive abstention further supports adopting the reasoning informing the development of these factors.

With this in mind, the *Republic Reader's Serv.* factors are as follows, as stated by Judge Mahoney:

> (1) the effect or lack thereof on the efficient administration of the estate if a Court recommends abstention, (2) the extent to which state law issues predominate over bankruptcy issues, (3) the difficulty or unsettled nature of the applicable state law, (4) the presence of a related proceeding commenced in state court or other nonbankruptcy court, (5) the jurisdictional basis, if any, other than 28 U.S.C. § 1334, (6) the degree of relatedness or remoteness of the proceeding to the main bankruptcy case, (7) the substance rather than form of an asserted "core" proceeding, (8) the feasibility of severing state law claims from core bankruptcy matters to allow judgments to be entered in state court with enforcement left to the bankruptcy court, (9) the burden of my docket, (10) the likelihood that the commencement of the proceeding in bankruptcy court involves forum shopping by one of the parties, (11) the existence of a right to a jury trial, and (12) the presence in the proceeding of nondebtor parties.

*In re Republic Reader's Serv., Inc.*, 81 B.R. at 429.  Additionally, it is useful, particularly in this case, to look to the elements of mandatory abstention as a starting point in assessing the propriety of permissive abstention.  *Id*. at 428.

As discussed above, the substantive elements of mandatory abstention are clearly satisfied

17

in this case. Again, but for RFF's counsel's error in failing to raise abstention, this is a case in which Congress would *require* the Court to abstain from hearing this case. Although the fact that RFF did not file the required motion is dispositive for purposes of mandatory abstention, it is equally important to acknowledge that RFF *opposes* jurisdiction under circumstances that Congress has decided abstention is required in all other respects. This scenario thus falls within the ambit of the concern for federalism that Congress addressed in creating the abstention limitations on "related to" jurisdiction; *i.e.*, that state court jurisdiction should not be readily displaced when state law predominates and allowing the claim to proceed in a state court of appropriate jurisdiction does not interfere with the administration of the bankruptcy estate. Therefore, the Court is inclined from the outset to invoke permissive abstention in order to effectuate the purpose behind 28 U.S.C. § 1334(c) generally.

The permissive abstention factors, which overlap the elements of mandatory abstention to a significant degree, also favor remand independently.

The first factor is the effect of this case on the efficient administration of the Debtors' estates in bankruptcy. Similarly, the sixth factor addresses the degree to which this case is related to the bankruptcy estates. Although the Court has already determined that the expansive Sixth Circuit test for "related to" jurisdiction is satisfied here, the above analysis of "related to" jurisdiction reveals that this case is unlikely to impact the Debtors' estates, and that the connection is remote. This is a garden variety tort claim for legal malpractice under Ohio law. RFF is seeking to hold its attorney liable for a breach of his own professional obligations. As discussed in footnote 5 above, while conceivable, it is not likely that a judgment in that case will become an issue in the bankruptcy at all. At the same time, RFF is listed as creditor in each of the Debtors' bankruptcy proceedings. If the

18

Debtors are liable to anyone for the debt to RFF, it is likely RFF itself, not Wasserman. For these reasons, the first and sixth factor favor abstention.

This case only involves issues of state law. Attorney malpractice is particularly likely to involve unique state law principles because it implicates professional and ethical rules established by the state of Ohio. *See In re Domington, Karcher, Salmond, Ronan & Rainone, P.A.*, 194 B.R. 750 (D. N.J. 1996) (finding both mandatory and permissive abstention where third-party brought legal malpractice claim against law firm-debtor arising from pre-petition loans to firm). The same consideration is applicable to the third factor – the difficulty or unsettled nature of applicable state law. Although attorney malpractice is certainly not a novel or unsettled area of law, the state court is most familiar with the professional and ethical standards applicable to RFF's claims and is particularly more informed in that area than an out-of-state federal judge.

Because this case was commenced in Cuyahoga County, the fourth factor is clearly satisfied. Similarly, the only basis for federal jurisdiction over this claim is § 1334(b). As discussed above, this Court cannot exercise diversity jurisdiction over the Defendants because they are citizens of Ohio. *See* 28 U.S.C. § 1441(b). Therefore, the fifth factor also favors abstention. The fact that RFF has a right to a jury trial, and has requested one, and the fact that the Debtors are not parties to this lawsuit, also favor abstention.

Ultimately, although there is no evidence that the Defendants are engaging in objectionable forum shopping, and the Court has no reason to believe that this case would be a burden on any court's docket, the balance of the applicable factors favors abstention under 28 U.S.C. § 1334(c)(1). Abstention is consistent with Congress' comity and respect for state law goals in light of the fact that this lawsuit involves attorney malpractice, an issue confined to the state of Ohio's tort law, common

19

law, and professional and ethical codes. Allowing the Defendant attorneys to force their clients out of their chosen forum in order to sue for legal malpractice is also problematic from the standpoint of basic fairness and justice. Finally, and perhaps most importantly, mandatory abstention would apply but for a poorly argued motion to remand in which RFF's attorney, although clearly scrambling for every avenue to avoid federal jurisdiction, completely overlooked the very statute Congress provided for his client's use.

### III. CONCLUSION

Accordingly, Plaintiff RFF Family Partnership, LP's *Motion to Remand* (Doc. 5) is **GRANTED**. Consequently, the Defendants' *Motion to Dismiss for Failure to Join Indispensable Parties or, in the Alternative, Motion to Transfer* (Doc. 6) is rendered **MOOT**.

**IT IS SO ORDERED.**

|  |  |
|---|---|
|  | s/Kathleen M. O'Malley |
|  | **KATHLEEN McDONALD O'MALLEY** |
| **Dated: March 4, 2008** | **UNITED STATES DISTRICT JUDGE** |