# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF OHIO
### EASTERN DIVISION

| | | |
|---|---|---|
| **RFF FAMILY PARTNERSHIP, LP,** | : | **Case No. 1:07 CV 1617** |
| | : | |
| **Plaintiff,** | : | |
| | : | **JUDGE KATHLEEN O'MALLEY** |
| **v.** | : | |
| | : | |
| **STEVEN WASSERMAN,** *et al.*, | : | **OPINION & ORDER** |
| | : | |
| **Defendants.** | : | |

This case is before the Court on the Defendants' *Motion to Dismiss for Failure to Join Indispensable Parties or, in the Alternative, Motion to Transfer* (Doc. 6) ("Motion to Dismiss or Transfer").  For the reasons more fully articulated below, the Defendants' Motion to Transfer (Doc. 6) is **GRANTED**, and this case is **TRANSFERRED** to the United States District Court for the Eastern District of New York.

## I.    BACKGROUND

### A.    FACTUAL BACKGROUND

The factual background of this case is set forth as follows in the Court's previous Order of March 4, 2008 (Doc. 21):

> The Plaintiff, RFF Family Partnerships, LP, ("RFF") is a California Partnership licensed by the State of California as a finance lender.  *Complaint*, Doc. 1-2 at ¶ 1. On May 4, 2007, RFF filed a Complaint in the Cuyahoga County Court of Common Pleas alleging four causes of action against the Defendants, Attorney Steven Wasserman ("Wasserman") and the law firm of which he is a named partner, Chernett, Wasserman, Yarger & Pasternak LLC ("CWYP") (collectively, the "Defendants").   The allegations in the Complaint arise from Wasserman's representation of RFF in connection with a series of financial transactions in which RFF loaned in excess of one million dollars to third parties.  *Id.* at ¶¶ 4-21.  In particular, Wasserman allegedly introduced CMI Financial Network, Inc. ("CMI")

to RFF as a client interested in borrowing $750,000.00 from RFF in late 2005. *Id.* at ¶¶ 10-15.  Wasserman allegedly told RFF that CMI was an event planning company with consistent, ongoing service contracts with major clients like Honeywell Security, and that a loan to CMI would be secured by CMI's accounts receivable, which were adequate to cover the amount of the loan.  In addition, Wasserman allegedly personally guaranteed the loan, prepared the transactional documents on behalf of RFF, and told RFF where to wire the funds.  RFF believes that CMI paid Wasserman a fee for obtaining the loan.  Similarly, RFF allegedly loaned hundreds of thousands of dollars to CMI in 2005 and 2006 in deals allegedly facilitated by Wasserman. *Id.*  RFF subsequently discovered that the loans were not properly collateralized and that Honeywell had cancelled its contracts with CMI. *Id.* at ¶ 20.  RFF believes that Wasserman knew the loans were not properly collateralized and did not tell RFF, despite the fact that he was acting in a fiduciary role as RFF's attorney. *Id.* at ¶ 21.  The Complaint includes a demand for a trial by jury. *Id.* at p. 8.

RFF's Complaint alleges that Wasserman's conduct constituted fraud, negligent misrepresentation, and legal malpractice, and that co-defendant CWYP is liable under the doctrine of *respondeat superior*. *Id.* at ¶¶ 22-39.

RFF voluntarily dismissed its fraud and negligent misrepresentation claims on July 20, 2007, leaving legal malpractice and *respondeat superior* as its only remaining claims.[1]  *See* Doc. 9.

Notably, RFF's Complaint does **not** name CMI or its owners, Hugh Thomas Grinnon and Jonathan H. Grinnon [("the Grinnons")], as Defendants.  Although CMI and the Grinnons (collectively, the "Debtors"), not Wasserman, are the parties to whom RFF loaned money, RFF chose to sue only Wasserman and CWYP.  Each of the Debtors – Hugh Grinnon, Jonathan Grinnon, and CMI - have filed bankruptcy petitions in the United States District Court for the Eastern District of New York.  *See In re Hugh T. Grinnon*, No. 07-70307(SB); *In re Jonathan H. Grinnon*, No. 07-70333(SB); *In re The CMI Network, Inc.*, 07-71165(SB).[2]

As noted by RFF, this is not the only lawsuit in which a lender is asserting claims against Wasserman and CWYP arising out of their association with the Grinnons and CMI.  *See* Doc. 5-3 (Complaint in *Boudle v. The CMI Network, et al.*).  The case *Boudle v. The CMI Network*, No. 8:07-cv-750-T-23MSS (M.D. Fla.), was filed in

---

[1]  The Court entered an Order dismissing RFF's fraud and negligent misrepresentation claims on August 1, 2007.

[2]  Therefore, any attempt by RFF to sue the Debtors would have been barred by the automatic stay triggered by their bankruptcy proceedings. *See* 11 U.S.C. 362(a)(1).

Florida state court and removed to the United States District Court for the Middle District of Florida.  In *Boudle*, Ange Boudle, an individual who loaned money to CMI in transactions facilitated by Wasserman and CWYP, sued CMI, the Grinnons, *and* Wasserman and CWYP.  In addition to claims against CMI and the Grinnons, the Complaint in *Boudle* asserts claims of fraudulent misrepresentation, negligent misrepresentation, and aiding and abetting fraud against Wasserman and CWYP.  *See* Doc. 5-3.  Furthermore, Boudle is listed as a creditor in both of the Grinnons' bankruptcy cases and filed an adversary proceeding in the bankruptcy court in both cases on April 11, 2007.  *See Boudle v. Jonathan H. Grinnon*, Adv. Pro. No. 07-8123(SB); *Boudle v. Hugh T. Grinnon*, Adv. Pro. No. 07-8122(SB).  On July 3, 2007, the Florida District Court granted Wasserman and CWYP's motion to transfer the *Boudle* case to the Eastern District of New York.  *See* Doc. 6-3.

In addition, Wasserman and CWYP have filed an adversary proceeding against each of the Grinnons in the bankruptcy court in New York.  *See* Docs. 6-4, 6-5 (Adv. Pro. Nos. 07-8167 and 07-8168).  In their adversary proceedings Wasserman and CWYP allege that they were defrauded by the Grinnons, who intentionally misrepresented the fortunes of their companies and the nature of the collateral used to secure the loans Wasserman and CWYP facilitated.  In essence, Wasserman and CWYP claim that they were duped by the Debtors just like the borrowers, RFF and Boudle.  The adversary proceedings specifically reference this lawsuit – RFF v. Wassserman – and seek "to deny Debtor[s'] discharge of [their] indebtedness to Plaintiffs in connection with direct claims for damages or derivative claims for indemnification and contribution arising out of a multi million dollar fraudulent scheme perpetrated by the Debtor[s]."  *See* Doc. 6-5 at 1.

Unlike Boudle, RFF has not filed an adversary proceeding against any of the Debtors in the bankruptcy court.  RFF is, however, listed as a creditor on Schedule F in each of the Debtors bankruptcy cases.  *See* Docs. 6-6, 6-7, 6-8.

(Doc. 21 at 1-4.)

## B.    PROCEDURAL HISTORY

### 1.    Removal

The Defendants removed this case to this Court on June 1, 2007.  (Doc. 1.)  On June 29, 2007, RFF filed a *Motion to Remand,* seeking to have the case remanded to the Cuyahoga County Court of Common Pleas.  (Doc. 5.)  On July 12, 2007, the Defendants filed their Motion to Dismiss or Transfer, seeking to have the case either dismissed for failure to join the Grinnons and CMI under

3

Rule 19 of the Federal Rules of Civil Procedure or transferred to the United States District Court for the Eastern District of New York, where the Debtors' bankruptcy cases are being litigated.  (Doc. 6.)

### 2.    Order of Remand to the Cuyahoga County Court of Common Pleas

Faced with these two competing motions, the Court determined that RFF's Motion to Remand was well-taken.  In so holding, the Court determined as follows:

(1)    Because the Defendants are citizens of Ohio, the forum state, removal was not appropriate on the basis of diversity jurisdiction pursuant to 28 U.S.C. § 1441(b), despite the fact that RFF never challenged removal on this grounds;

(2)    Although this lawsuit is "related to" the Debtors' bankruptcy proceedings in the Eastern District of New York under the Sixth Circuit's exceedingly liberal interpretation of the standard for jurisdiction under 28 U.S.C. § 1334(b), permissive abstention is appropriate in this case pursuant to 28 U.S.C. § 1334(c)(1).

(Doc. 21.)  Accordingly, the Court remanded the case to the Cuyahoga County Court of Common Pleas and the Defendants' Motion to Dismiss or Transfer was rendered moot.  (*Id*.; Doc. 22.)

### 3.    Appeal to the Sixth Circuit

The Defendants timely appealed the Court's ruling remanding the case based on permissive abstention.[3]  (Doc. 24.)

The United States Court of Appeals for the Sixth Circuit reversed and remanded the case to this Court on April 3, 2009.  (Doc. 34.)  Although the Sixth Circuit upheld the Court's decision to invoke permissive abstention pursuant to 28 U.S.C. § 1334(c)(1) as a valid exercise of the Court's discretionary authority, it also held that the forum defendant rule (*i.e.*, 28 U.S.C. § 1441(b)) is a procedural rule relating to removal that cannot be raised by the district court *sua sponte*.  *RFF*

---

[3]    Additionally, the Defendants filed a motion to stay the Court's remand order during the pendency of the appeal.  (Doc. 23.)  The Court denied this motion. (Doc. 29.)

4

*Family P'ship, LP v. Wasserman*, 316 Fed. Appx. 410 (6th Cir. 2009) (unpublished).[4]  Accordingly, the Sixth Circuit held that this Court erred because, at the time it issued the order remanding the case to the state court, RFF had waived its right to invoke the forum defendant rule and diversity jurisdiction existed.  *Id*. at 1-2.  The Sixth Circuit therefore remanded the case for further proceedings.  *Id*. at 2.

### 4.    Proceedings Following Remand from the Sixth Circuit

In light of the Sixth Circuit's decision, the Court re-opened the case, requested status reports from the parties, and scheduled a status conference.  (Docs. 35, 38.)  In their status report (Doc. 37) and at the status conference, the Defendants requested leave to renew their Motion to Dismiss or Transfer (Doc. 6).  (Doc. 41.)  For its part, RFF requested that discovery begin immediately and requested the opportunity to file a supplemental brief in response to the Defendants' Motion to Dismiss or Transfer (Doc. 6).  (*Id*.)  The Court granted both parties' requests:  it ordered the Defendants to file an answer to the complaint and for discovery to commence immediately, renewed the Defendants' Motion to Dismiss or Transfer, and ordered the parties to simultaneously file

---

[4]    In spite of the Sixth Circuit's unpublished opinion in this case, it appears that the question of whether a district court may raise the forum defendant rule *sua sponte* still has not been definitively resolved in this circuit.  *See Balzer v. Bay Winds Federal Credit Union*, 622 F. Supp. 2d 628, 630-32 (W.D. Mich. 2009) (citing *RFF P'Ship, LP*, but concluding as follows:  "[The Defendant] . . . concedes the case is outside the removal jurisdiction specified by Congress, but argues that the Court is powerless to enforce the congressional limit unless Plaintiff raises it. This is incorrect. At the very least, the forum-defendant rule 'relates to [this Court's] jurisdiction.' *Thompson*, 1999 WL 519297 at *3-4. It is not a mere procedural rule. Consequently, the Court has an obligation to raise the issue on its own accord. *See Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574, 583, 119 S.Ct. 1563, 143 L.Ed.2d 760 (1999); *see also Univ. of S. Ala. v. Am. Tobacco Co.*, 168 F.3d 405, 410 (11th Cir.1999) ('We add that our removal jurisdiction is no exception to a federal court's obligation to inquire into its own jurisdiction.')."). This Court remains convinced that the *Balzer* court's analysis is correct – but that is not the law of this case.

5

supplemental briefs regarding dismissal or transfer.  (*Id.*)

On September 16, 2009, the parties filed supplemental briefs regarding the Motion to Dismiss or Transfer.  (Docs. 43, 44.)  Subsequently, the Defendants filed several notices informing the Court that Hugh and Jonathan Grinnon's bankruptcy cases are presently proceeding in the Eastern District of New York, and that the Defendants' adversary proceedings against the Grinnons are an active aspect of those bankruptcy cases.  (Docs. 45-47.)

Accordingly, the Defendants' Motion to Dismiss or Transfer is now ripe for adjudication.

## II.  DISCUSSION

### A.  MOTION TO TRANSFER

The first issue for the Court to resolve is whether this case should be transferred to the Eastern District of New York, where the related bankruptcy cases are presently pending.  Although a motion to transfer generally involves a straight-forward application of the well-known discretionary factors associated with 28 U.S.C. § 1404, this case adds nuances worthy of the Court's attention.  First, there is a split of authority with respect to whether motions to transfer proceedings that are "related to" bankruptcy proceedings are governed by 28 U.S.C. § 1404 or § 1412.  Second, RFF correctly notes that the Sixth Circuit upheld this Court's decision not to exercise "related to" jurisdiction pursuant to 28 U.S.C. § 1334.  Each of these issues will be addressed in the discussion that follows.

#### 1.  Applicable Law

##### a.  The General Transfer Provision – 28 U.S.C. § 1404(a)

In most cases, 28 U.S.C. § 1404(a) governs motions to transfer venue to another federal district court.  Section 1404(a) provides: "For the convenience of the parties and witnesses, in the

interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." In evaluating whether transfer is appropriate under § 1404(a), the Court considers numerous factors, including case-specific factors, public interest factors, and private concerns. *See Krawec v. Allegheny Co-Op Ins. Co.*, No. 1:08cv2124, 2009 WL 1974413, at *4 (N.D. Ohio July 7, 2009) (O'Malley, J.) (citing *Kerobo v. Sw. Clean Fuels Corp.*, 285 F.3d 531 (6th Cir. 2002) and listing fifteen applicable factors).[5]  The § 1404(a) factors, including the plaintiff's

---

[5]     In *Krawec*, this Court listed the § 1404(a) factors as follows:

> Case-specific factors include, but are not limited to:
> (1) the nature of the suit;
> (2) the place of events involved;
> (3) relative ease of access to sources of proof;
> (4) nature and materiality of testimony to be elicited from witnesses who must be transported; . . .
> (5) residences of parties . . . [and
> (6) the plaintiff's choice of forum.]
>
> Private factors include:
> (1) the relative ease of access to sources of proof;
> (2) the availability of compulsory process for attendance of unwilling witnesses;
> (3) the cost for obtaining attendance of willing witnesses;
> (4) the possibility of inspecting the premises, if appropriate; and
> (5) all other practical problems that make trial of a case easy, expeditious and inexpensive.
>
> Public interest factors include:
> (1) administrative difficulties of courts with congested dockets;
> (2) the burden of jury duty on members of a community with no connection to the litigation;
> (3) the local interest of having localized controversies decided at home; and
> (4) the appropriateness of having diversity cases tried in a forum which is familiar with the governing law.

*Krawec*, 2009 WL 1974413 at *4 (quoting *Sirak v. J.P. Morgan Chase & Co.*, No. 5:08-CV-169, 2008 WL 4845950 (N.D. Ohio Nov. 5, 2008) (citing *Kerobo*, 285 F.3d 531 (6th Cir.2002)).

7

choice of forum, are non-dispositive. *Id.* "A court need not extensively discuss each of the . . . factors, but should instead focus its analysis on those factors that are particularly relevant to a given transfer determination." *Id.*

### b.    The Bankruptcy-Specific Transfer Provision – 28 U.S.C. § 1412

There is, however, a transfer provision specific to bankruptcy cases, 28 U.S.C. § 1412. Section 1412 provides: "A district court may transfer a case or proceeding under title 11 to a district court for another district, in the interest of justice or for the convenience of the parties." 28 U.S.C. § 1412.  Although § 1404(a) and § 1412 are similar, there are notable differences.  First, the "'interest of justice' and 'convenience of the parties' standards in § 1412 are disjunctive and separate, and transfer is appropriate even if only one is met." *MD Acquisition, LLC v. Myers*, No. 2:08cv494, 2009 WL 466383, at *6 (S.D. Ohio Feb. 23, 2009).  Second, while the factors to consider in evaluating a § 1412 transfer are very similar to the § 1404(a) factors, *see Creekridge Capital, LLC v. Louisiana Hosp. Ctr., LLC*, 410 B.R. 623, 629 (D. Minn. 2009);[6] *In re Drytech, Inc.*, No. 05-

---

[6]    In *Creekridge Capital*, the United States District Court for the District of Minnesota listed the § 1412 factors as follows:

> In deciding whether transfer of a "related-to action" under § 1412 would be in the interest of justice, courts consider factors such as (1) the economical and efficient administration of the bankruptcy estate, (2) the presumption in favor of the forum where the bankruptcy case is pending, (3) judicial efficiency; (4) the ability to receive a fair trial, (5) the state's interest in having local controversies decided within its borders by those familiar with its laws, (6) the enforceability of any judgment rendered, and (7) the plaintiff's original choice of forum. . . . Other factors courts have identified in evaluating the interest of justice include the proximity of creditors to the court, the proximity of the debtor to the court, the proximity of the witnesses necessary to the administration of the estate, and the location of the assets. . . . Among the factors that courts often consider in evaluating whether transfer would be in the convenience of the parties are (1) the location of the plaintiff and

8

07541, 2008 WL 4525331, at * 4 (Bankr. M.D. Tenn. Jan. 24, 2008); and *In re Gurley*, 215 B.R. 703, 709 (Bankr. W.D. Tenn. 1997), there is an important difference relevant to the "interest of justice" analysis. *See In re Drytech, Inc.*, 2008 WL 4525331 at * 4.  Namely, the interests of the bankruptcy estate, as opposed to the other litigants' interests, are paramount in connection with this consideration in the context of a § 1412 transfer. *Id.* (citing *Sudbury, Inc. v. Dlott*, 149 B.R. 489, 492 (Bankr. N.D. Ohio 1993)).  Finally, and perhaps most importantly, there is a strong presumption that the proper venue for a case related to a bankruptcy proceeding is the district in which the bankruptcy proceeding is pending. *See Creekridge Capital*, 410 B.R. at 629; *MD Acquisition, LLC*, 2009 WL 466383 at *4; *Sudbury, Inc.*, 149 B.R. at 492 ("There is a general presumption that all matters involving a bankruptcy should be tried in the court in which the bankruptcy is pending." (omitting citations and quotations));  *GEX Kentucky, Inc. v. Wolf Creek Collieries Co.*, 85 B.R. 431, 435 (Bankr. N.D. Ohio 1987) ("Of all the considerations courts have weighed in this process, the most important one is whether the transfer would promote the economic and efficient administration of the estate. . . . This consideration underlies the general rule that the court where the bankruptcy case is pending is the proper venue for all related proceedings within the court's jurisdiction." (omitting citations and quotations)).

        **c.**      **Section 1412 Provides the Governing Standard for the Transfer of Proceedings "Related To" a Bankruptcy Proceeding**

As mentioned above, the courts are split with respect to whether § 1404(a) or § 1412 governs

---

the defendant, (2) ease of access to necessary proof, (3) convenience of witnesses, (4) availability of subpoena power for unwilling witnesses, and (5) expenses related to obtaining witnesses. . . .

410 B.R. at 629 (omitting citations).

9

motions to transfer a civil case that is "related to" a bankruptcy proceeding pending in another

district pursuant to 28 U.S.C. § 1334(b).  The *Creekridge Capital* court explained the situation aptly

as follows:

> There is a split of authority regarding whether a motion to transfer an action that is "related to" a bankruptcy action in another forum should be analyzed under § 1404 rather than § 1412.  The courts in *Dunlap v. Friedman's, Inc.*, 331 B.R. 674, 677 (S.D.W. Va. 2005), and *City of Liberal v. Trailmobile Corp.*, 316 B.R. 358, 362 (D. Kan. 2004), provided extensive lists of the courts that have come down on either side of the issue and noted that there is even disagreement as to which position represents the majority viewpoint.

*Creekridge Capital*, 410 B.R. at 628.  Ultimately, the *Creekridge Capital* court followed both

*Dunlap* and *City of Liberal*, as well as several subsequent decisions, in holding that § 1412 governs

a motion to transfer an action that is related to a bankruptcy proceeding in another forum.  *Id*.  In

particular, *Creekridge Capital* notes that the analysis in *Dunlap* is both thorough and persuasive.

*Id*.  (citing *Dunlap*, 331 B.R. at 677-80).

There is no Sixth Circuit authority addressing whether § 1404(a) or § 1412 governs motions

to transfer a civil case that is "related to" a bankruptcy proceeding pending in another district.  For

their part, the parties did not take a position on this issue.  The Defendants did not mention it in their

briefs,[7] and, although RFF astutely identifies the split of authority, it analyzes transfer under both §

1404(a) and § 1412 and does not take a position on the issue of which should govern if the Court

treats this case as "related to" the Debtors' bankruptcies.[8]

---

[7]     The Defendants' supplemental brief following the Sixth Circuit's remand is truly brief: it essentially indicates that the Defendants will rest on their original briefing and updates the Court regarding the status of the Debtors' bankruptcy proceedings.  (Docs. 45-47.)  In their original briefing, the Defendants cite § 1412 and note that § 1404(a) is similar without further comment.  (Doc. 7 at 7-8.)

[8]     As discussed below, RFF's position is that "related to" jurisdiction is irrelevant in light of the Sixth Circuit's decision upholding this Court's exercise of permissive

10

Under these circumstances, the Court finds the analysis in *Dunlap* persuasive.  This Court agrees with the *Creekridge Capital* court that the *Dunlap* court's reasoning is sensible, logical, and well-articulated.  *See Dunlap*, 331 B.R. at 677-80.  In sum, *Dunlap* holds that the plain language of § 1412, read in the context of § 1409 and the legislative history of the venue provisions of the bankruptcy code, compel the conclusion that congress intended § 1412 to apply to proceedings "related to" a bankruptcy proceeding pursuant to 28 U.S.C. § 1334(b).  *Id.*

### d. "Related To" Jurisdiction Exists

Having determined that the propriety of transferring a proceeding "related to" bankruptcy proceedings pending in another district is governed by § 1412, the question is whether this case is "related to" the Debtors' bankruptcy proceedings in the Eastern District of New York.

In fact, the Court expressly found that this case is "related to" the Debtors' bankruptcy proceedings pursuant to 28 U.S.C. § 1334(b) under the Sixth Circuit's exceedingly liberal "conceivable effects" test.  (*See* Doc. 21 at 8.)  Specifically, the Court articulated the "conceivable effects" test for "related to" jurisdiction as follows:

Section 1334(b) states as follows:

> Notwithstanding any Act of Congress that confers exclusive jurisdiction on a court or courts other than the district courts, **the district courts shall have original** but not exclusive **jurisdiction of all civil proceedings** arising under title 11, or arising in or **related to cases under title 11**.

28 U.S.C. § 1334(b) (emphasis added).  Under Sixth Circuit law interpreting § 1334(b), the test to be applied in determining whether this lawsuit is "related to" the Debtors' bankruptcy proceedings is whether the outcome of RFF's claims against the Defendants could conceivably have any effect on the Debtors' estates.  *See Robinson v. Michigan Consol. Gas Co., Inc.*, 918 F.2d 579, 583 (6th Cir. 1990).

---

abstention pursuant to 28 U.S.C. § 1334(c)(1).  (Doc. 43.)

(*Id*. at 6.)  The Court noted, moreover, that potential indemnification claims such as the Defendants'

potential claims against the Grinnons in this case can provide the basis for "related to" jurisdiction.

> [L]awsuits that do not directly involve the debtor as a party, but which may give rise
> to indemnification claims against the debtor, can satisfy the test for "related to"
> jurisdiction.  *See In re Dow Corning*, 86 F.3d at 494.  In *Dow Corning*, the Sixth
> Circuit stated:
>
>> The potential for [the debtor] being held liable to the nondebtors in
>> claims for contribution and indemnification, or vice versa, suffices to
>> establish a conceivable impact on the estate in bankruptcy.  Claims
>> for indemnification and contribution, whether asserted against or by
>> [the debtor], obviously would affect the size of the estate and the
>> length of time the bankruptcy proceedings will be pending, as well as
>> [the debtor's] ability to resolve its liabilities . . . .
>
> *Id.*  Moreover, the Sixth Circuit has held that § 1334(b) "does not require a finding
> of definite liability of [an] estate as a condition precedent to holding an action related
> to a bankruptcy proceeding."  *In re Salem Mortgage Co.*, 783 F.2d at 635.  Therefore,
> indemnity claims against the debtor need not ripen in order to serve as a potential
> basis for "related to" jurisdiction, as long as the potential indemnification claims will
> have a conceivable effect on the bankruptcy proceedings.  *In re Dow Corning*, 86
> F.3d at 491.

(*Id*. at 8.)  Applying this standard, the Court held that this case is "related to" the Debtors'

bankruptcy proceedings in the Eastern District of New York.  (*Id*.)

RFF acknowledges this fact, but contends in its supplemental brief that the Court's second

finding – that it would abstain from exercising "related to" jurisdiction pursuant to § 1334(c)(1) –

renders "related to" jurisdiction irrelevant at this stage of the case given that the permissive

abstention aspect of this Court's remand order was undisturbed by the Sixth Circuit's opinion.  In

short, RFF argues that subject matter jurisdiction is now solely based on diversity of citizenship

under 28 U.S.C. § 1332(a)(1).

This is a fair point.  RFF ignores, however, the essential nature of abstention – i.e., that

jurisdiction *exists*, but the Court need not or may not exercise it under the particular circumstances

12

of the case because one of the various abstention doctrines applies.  In other words, the Court's finding that this case is "related to" the Debtors' bankruptcies remains intact irrespective of whether the Court chooses to exercise jurisdiction on that basis.  *See In re Canton*, Bankr. No. 08-61683-11, 2009 WL 981114, at *2 (Bankr. D. Mont. Mar. 17, 2009) ("[A]bstention provisions implicate the question whether the bankruptcy court should exercise jurisdiction, not whether the court has jurisdiction in the first instance. . . . The act of abstaining presumes that proper jurisdiction otherwise exists." (quoting *In re General Carriers Corp.*, 258 B.R. 181, 190 (9th Cir. 2001) (quoting *In re S.G. Phillips Constructors, Inc.*, 45 F.3d 702, 708 (2nd Cir. 1995)))).  The Sixth Circuit's holding that diversity jurisdiction exists in this case rendered the Court's permissive abstention finding superfluous, but it did not in any way undermine the Court's finding that this case is "related to" the Debtors' bankruptcy proceedings.

Accordingly, the Court finds that this case should be analyzed as "related to" the Debtors' bankruptcy proceedings under 28 U.S.C. § 1334(b).

### 2. Applying the § 1412 Factors

Having concluded that (1) § 1412 governs transfer of cases "related to" a bankruptcy proceeding and (2) this case is "related to" the Debtors' bankruptcy proceedings, the Court's next task is to apply the § 1412 factors to determine whether this case should be transferred to the Eastern District of New York.

### a. The § 1412 Factors

As explained above, § 1412 provides two alternative avenues for a district court to find that transfer is appropriate – first, when it is in the "interest of justice," and, second, for the "convenience of the parties."  *See MD Acquisition*, No.2009 WL 466383, at *6.  In *In re Bruno's, Inc.*, 227 B.R.

311, 323-25 (Bankr. N.D. Ala. 1998), the Bankruptcy Court for the Northern District of Alabama

conducted a comprehensive analysis of the factors a district court should consider in connection with

both the "interest of justice" and "convenience of the parties" prong of the § 1412.  The Court finds

the *In re Bruno's* court's analysis of the appropriate factors persuasive and, like the Court in *Frelin*

*v. Oakwood Homes Corp.*, 292 B.R. 369, 388 (Bankr. E.D. Ark. 2003), adopts them as follows:

*Factors Relevant to "Interest of Justice" Prong of § 1412:*

> (1) economics of estate administration;
> (2) presumption in favor of the "home court";
> (3) judicial efficiency;
> (4) ability to receive a fair trial;
> (6) the state's interest in having local controversies decided within its borders, by those familiar with its laws;
> (7) enforceability of any judgment rendered; and
> (8) plaintiff's original choice of forum.

*Factors Relevant to "Convenience of Parties" Prong of § 1412:*

> (1) Location of the plaintiff and defendant;
> (2) Ease of access to necessary proof;
> (3) Convenience of witnesses;
> (4) Availability of subpoena power for the unwilling witnesses; and
> (5) Expense related to obtaining witnesses.

*In re Bruno's, Inc.*, 227 B.R. at 324-25.[9]

### b.    RFF's § 1412 Arguments

RFF does not analyze the two prongs of § 1412 separately, but argues that the ease of access

to proof, availability of compulsory process, and cost of obtaining witnesses all favor maintaining

---

[9]     RFF cites *In re Bruno's* in its supplemental brief, but lists only the six factors articulated by the Bankruptcy Court for the Northern District of Ohio in *Things Remembered, Inc. v. BGTV, Inc.*, 151 B.R. 827, 832 (Bankr. N.D. Ohio 1993). *Things Remembered* does not treat the two prongs of § 1412 independently and is far less comprehensive than *In re Bruno's* in its analysis of the factors appropriate to the § 1412 transfer determination.

14

jurisdiction. (Doc. 43 at 9.)  RFF reasons that the key witnesses – i.e., the Defendants – are located in Ohio, and that even the Court has concluded that the Grinnons are unlikely to testify. (*Id.*)  In addition, RFF asserts that transfer will compromise the fairness of the proceedings by increasing the time and expense associated with this case.  RFF notes that this Court has already stated that "[a]llowing the Defendant attorneys to force their clients out of their chosen forum in order to sue for legal malpractice is also problematic from the standpoint of basic fairness and justice." (Doc. 43 at 10 (quoting Doc. 21 at 20).)  Lastly, RFF argues that the local interest and familiarity with applicable law militate against transfer because, as this Court noted in the remand order, attorney malpractice is "an issue confined to the state of Ohio's tort law, common law, and professional and ethical codes." (*Id.* (quoting Doc. 21 at 19-20).)

### c.      The Defendants' § 1412 Arguments

For their part, the Defendants argue in their Motion to Transfer that the most significant factor in this case is judicial efficiency.  The Defendants contend that litigating this case before the Eastern District of New York, where the bankruptcy proceedings are pending and already involve the Defendants, Debtors, and RFF, will substantially increase judicial efficiency.  The Defendants cite *Haworth v. Sunarhauserman Ltd.*, 131 B.R. 359 (Bankr. W.D. Mich. 1991), as an analogous case in which the Court transferred a related action to the district in which the bankruptcy proceedings were pending largely in service of judicial efficiency. (Doc. 7 at 6-8.) The Defendants further argue that transfer will promote "unified resolution of all the interrelated claims, promote judicial economy, and avoid the possibility of inconsistent results," and that the Debtors records are the key item of discovery and are located in New York. (*Id.* at 7.)

####        d.        Analysis of the § 1412 Factors

"Deciding whether transfer under § 1412 is warranted requires a case specific analysis that is subject to broad discretion of the district court." *Creekridge Capital*, 410 B.R. at 629 (citing *In re Bruno's,* 227 B.R. at 324). The party seeking transfer bears the burden of demonstrating that it is appropriate. *See Haworth, Inc.*, 131 B.R. at 363. For the reasons articulated in RFF's supplementary brief, whether transfer is the best course of action under the circumstances of this case is a close question.

####        i.        Analysis of the "Interest of Justice" Factors

####        a.        The Presumption in Favor of the "Home Court"

As explained above, with respect to the "interest of justice" prong of § 1412, the interests of the bankruptcy estate are paramount to the analysis. *See Sudbury, Inc.*, 149 B.R. at 492. The § 1412 analysis begins with the strong presumption in favor of the "home court." *See Creekridge Capital*, 410 B.R. at 629; *MD Acquisition, LLC*, 2009 WL 466383 at *4; *Sudbury, Inc.*, 149 B.R. at 492 ("There is a general presumption that all matters involving a bankruptcy should be tried in the court in which the bankruptcy is pending." (omitting citations and quotations)). In this context, "home court" refers to the district in which the Debtors' bankruptcy proceeding is pending. *See In re Bruno's*, 227 B.R. at 326 n.57. Accordingly, in this case, the Eastern District of New York is presumptively the proper venue for this action, and this factor strongly favors transfer.

####        b.        Economics of Estate Administration

The economics of estate administration factor relates to the extent to which the outcome of the case could effect the administration of the Debtors' estate if it is not transferred. The Defendants do not meaningfully address this factor, and the Court has already concluded in its remand order that

the likelihood that this action for attorney malpractice against the Defendants will effect the Debtors' estate is slight.  Accordingly, this factor militates against transfer.

### c.    Judicial Efficiency

Judicial efficiency, in conjunction with the presumption in favor of the "home court," is the Defendants primary argument in favor of transfer.  The Defendants' primary defense is that they too were victimized by the fraudulent misrepresentations of the Debtors, and, therefore, did not breach a duty to their clients.  The "home court" is clearly most familiar with this issue, as it is being litigated in the bankruptcy proceedings and the Defendants' and Boudle's related adversary proceedings.  The arguments and submissions relevant to this issue are already before that court, and, therefore, transferring this case there would clearly serve judicial efficiency.  This factor strongly favors transfer.

### d.    Ability to Receive a Fair Trial

The next factor is whether transfer would compromise RFF's ability to receive a fair trial.  RFF points out that this Court indicated in its remand order that basic fairness and justice counsels against "[a]llowing the Defendant attorneys to force their clients out of their chosen forum in order to sue for legal malpractice."  (Doc. 43 at 10 (quoting Doc. 21 at 20).)  The Court notes, however, that this statement was made in the context of the Court's permissive abstention finding and that, in light of the Sixth Circuit's opinion, RFF has now been forced out of its chosen forum – the Cuyahoga County Court of Common Pleas.  The relevant question now is which federal court is the appropriate venue for this action, and whether RFF can receive a fair trial in the Eastern District of New York.  There is no reason to believe the Eastern District of New York would be less fair to the parties than this Court.

17

> **e.** **The State's Interest in Having Local Controversies Decided within Its Borders by those Familiar with Its Laws**

Ohio's interest in having local controversies decided by a court within Ohio is another factor to consider. Again, Ohio state court is no longer an option for this case. A federal court within Ohio is the only alternative to the Eastern District of New York. Although attorney malpractice is not a cause of action commonly litigated before this Court, it is obviously more familiar with the principles of Ohio law underlying the claim than the Eastern District of New York. Accordingly, for the reasons stated in the Court's remand order, this factor militates against transfer. (*See* Doc. 21 at 19-20.)

> **f.** **RFF's Original Choice of Forum**

Similarly, the fact that RFF chose to litigate this case in Ohio militates against transfer, although only slightly given the parties' residence and the other circumstances of the case. RFF is a resident of California, not Ohio. The Debtors are not Ohio residents. This leaves the Defendants as the only Ohio residents, but they want the case to proceed in New York. Under these circumstances, the Court will not give substantial weight to RFF's choice of forum. *See*, *e.g.*, *Dorsey v. Hartford Life & Acc. Ins. Co.*, No. 1:08cv243, 2009 WL 703384, at *4-5 (E.D. Tenn. Mar. 16, 2009) ("As conceded by Plaintiff, the Eastern District of Tennessee is not Plaintiff's home forum and, therefore, her choice of forum is entitled to less deference than if it was her home forum.").

> **ii.** **The Interest of Justice Factors Favor Transfer**

In sum, the presumption in favor of the home court and judicial efficiency clearly favor transfer, while the remaining interest of justice factors are either neutral or militate against transfer.[10]

---

[10]    Neither party argues that the "enforceability of any judgment rendered" factor is relevant in this case.

18

Although the nature of this action – attorney malpractice under Ohio law – and the attenuated relationship between this case and the Debtors' bankruptcy proceedings make this a close question for the reasons explained in the Court's remand order, the Court finds that the presumption in favor of the home court and the judicial efficiency to be gained by litigating all matters relating to the Debtors' alleged fraudulent misrepresentations in a single forum outweigh the acknowledged benefits of litigating this case in a court within Ohio.

The Court notes that while this is a close question within the exercise of the Court's discretion, the decision is supported by *Haworth, Inc.*, 131 B.R. 359.  In that case, Bankruptcy Judge Laurence E. Howard of the Bankruptcy Court for Western District of Michigan found that transfer was appropriate in the interest of judicial efficiency given that the "home court" had already begun to hear evidence and make rulings in adversary proceedings arising out of the same complex facts and circumstances as the matter before the court.  *Id*. at 363.  Judge Howard noted that "[i]t would be a waste of judicial energy for me to begin to hear the same issues."  *Id*.  He further explained that transfer was appropriate in order to "place all disputes arising out of [the facts and circumstances] before the Court which is hearing the [debtor's] bankruptcy . . . ."  *Id*.  Similarly, although RFF's claim is simple, the complex and interrelated facts and circumstances relevant to resolving it are being litigated in the Eastern District of New York, and all of the parties involved in this case are also before that Court, including RFF who is listed as a creditor on Schedule F in each of the Debtors bankruptcy cases.  Consequently, the Court finds that the most efficient approach to administering this case is to transfer it to the court in which all other matters relating to the facts and circumstances underlying RFF's claim are being litigated.

Accordingly, the Defendants' Motion to Transfer is **GRANTED**.[11]

### 3.    Alternative § 1404(a) Arguments & Analysis

Finally, although the Court has determined that the Defendants' Motion to Transfer is governed by 28 U.S.C. § 1412, the Court will briefly address the arguments RFF articulated in its supplemental brief in opposition to transfer relating to the general transfer statute, 28 U.S.C. § 1404(a).  (*See* Doc. 43.)

Transfer would not be appropriate under § 1404(a), RFF argues, because the case could not have been brought in the Eastern District of New York.  The Court rejects this argument because, for the reasons summarized above and discussed in detail in the Court's remand order, this case is "related to" the Debtors' bankruptcy proceedings pending in the Eastern District of New York.  Therefore, pursuant to 28 U.S.C. § 1409, it could have been "commenced" there.

RFF also contends that, even if this case could have been brought in the Eastern District of New York, the § 1404(a) factors militate against transfer.  As the Court has indicated, RFF makes a compelling argument on this point by quoting excerpts from the Court's remand order.[12]  RFF acknowledges that "this dictum concededly concerned whether this Court should abstain from hearing the case with regards to 'related to' jurisdiction," but it still contends that "such

---

[11]    Because the Court has concluded that transfer is appropriate based on the "interest of justice" factors, it need not analyze the "convenience of the parties" factors.

[12]    RFF quotes language from the Court's remand order indicating, *inter alia*, (1) that the connection between this case and the Debtors' bankruptcies (including the possibility of an indemnification obligation) is remote and attenuated; (2) that "[t]his is a garden variety tort claim for legal malpractice under Ohio law[,]" an area "particularly likely to involve unique state law principles because it implicates professional and ethical rules established by the state of Ohio"; and (3) that an Ohio court is "more informed in that area than an out-of-state federal judge."  (Doc. 43 at 2, 6 (quoting Doc. 21).)

20

considerations carry the same weight with regard to whether this case should be transferred to a federal court in New York." (Doc. 43 at 6.)

Less compelling are RFF's arguments that the key witnesses and the Defendants are located in the Northern District of Ohio, and that the plaintiff's choice of forum should be given "great weight" in this case. (Doc. 43 at 6-7.) The Defendants themselves are likely to be the key witnesses, and, obviously, they <u>strongly</u> desire to litigate this case in the Eastern District of New York. And, this Court does not treat the plaintiff's choice of forum as a factor "of paramount importance; it is instead one factor to be weighed equally with other relevant factors." *Krawec*, 2009 WL 1974413 at * 4 (quoting *Donia v. Sears Holding Corp.*, 2008 WL 2323533 (N.D. Ohio May 30, 2008). As discussed above, RFF's choice of forum, moreover, is entitled to less weight because California, not the Northern District of Ohio, is RFF's home state. *See, e.g., Dorsey*, 2009 WL 703384, at *4-5.

As various courts have observed, the § 1404(a) and § 1412 analysis is very similar. *See, e.g., Sabre Techs., L.P. v. TSM Skyline Exhibits, Inc.*, 2008 WL 4330897 at *8 (S.D.Tex. Sept. 18, 2008) (citing 15 Charles A. Wright, Arthur R. Miller & Edward D. Cooper, Federal Practice and Procedure § 3843 at 26 (3d ed.2007)). Section 1404(a) encompasses the same factors that favor transfer pursuant to § 1412 – i.e., judicial efficiency gained by litigating all disputes relating to the Debtors bankruptcy in the court in which the bankruptcy is pending. Accordingly, for all of the reasons discussed above in the § 1412 analysis, the Court would also find that, although this is a close question, the case should be transferred to the Eastern District of New York pursuant to § 1404(a).

## III. THE DEFENDANTS' MOTION TO DISMISS FOR FAILURE TO JOIN INDISPENSABLE PARTIES

Because the Court has determined that this case should be transferred to the Eastern District of New York, it will leave the question of whether the Debtors are indispensable parties to this action

for that court to resolve.  Accordingly, the Court will not rule on the Defendants' Motion to Dismiss for Failure to Join Indispensable Parties.

**IV.**    <u>**CONCLUSION**</u>

For all of the foregoing reasons, the Defendants' *Motion to Transfer* (Doc. 6) is **<u>GRANTED</u>** and this case is hereby **<u>TRANSFERRED</u>** to the United States District Court for the Eastern District of New York, where the bankruptcy petitions of Hugh Thomas Grinnon, Jonathan H. Grinnon, and CMI Financial Network, Inc. are being litigated.

**IT IS SO ORDERED.**

s/Kathleen  M.  O'Malley
_____
**KATHLEEN  McDONALD  O'MALLEY**
**UNITED STATES DISTRICT JUDGE**

**Dated:         January 29, 2010**

22